UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AHRAN NAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 19-cv-7832 |
| ) | Judge Marvin E. Aspen |
| ANDREW SAUL, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Ahran Nam seeks judicial review of the final decision[1] of Andrew Saul, Commissioner of the Social Security Administration ("SSA"), denying Plaintiff's application for benefits under 42 U.S.C. § 405(g). (Compl. (Dkt. No. 1).) Defendant seeks affirmation of its final decision. (Mot. Summ. J. (Dkt. No. 13).) For the foregoing reasons, we deny Defendant's motion and remand the SSA's final decision for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

In April 2016, when Plaintiff was fifty-nine years old, she was diagnosed with breast cancer. (R. 363—70.) Two months later, Plaintiff underwent a lumpectomy, sentinel node dissection, and then was prescribed 10 years' worth of radiation therapy and Anastrozole. (R. 309–313, 331–42, 355, 370—75.) On June 27, 2016, Dr. Chon, Plaintiff's primary care

---

[1] When the Appeals Council denies review, as it did here, the ALJ's decision constitutes the Commissioner's final decision. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

physician, noted that Plaintiff's surgery and subsequent chemotherapy and radiation therapy left her feeling weak. (R. 314.)

In January 2017, Plaintiff began to experience medication side effects of myalgias and arthralgias. (R. 437, 474, 451, 460.) Four months later, Plaintiff was diagnosed with Sciatica of the right side and hand edema. (R. 523.) At around that time, a lumbar spine MRI revealed degenerative changes, including disc bulge, mild to moderate bilateral facet hypertrophy, posterior osseous spurring, and mild to moderate stenosis and foraminal narrowing. (R. 433–34.)

Then in June 2017, Plaintiff was diagnosed with reactive depression. (R. 488, 496, 529.)

In February 2018, an orthopedist diagnosed Plaintiff with tendonitis and limited motion, frozen shoulder in her left shoulder, and possible arthritis in her hands. (R. 567, 569.)

The primary medical opinion evidence in the record is a brief note from Plaintiff's treating physician, Dr. Chon, and that of the State agency medical consultants. While Plaintiff was completing chemotherapy in June 2016, Dr. Chon opined that she was "disabled to work for [the] next several months." (R. 314.) Dr. Chon did not provide any additional details or ongoing updates on Plaintiff's ability to work. (*Id.*) In July 2016, a State agency medical consultant opined that Plaintiff's breast cancer was a non-severe impairment. (R. 62–67.) On reconsideration, another consultant affirmed the findings. (R. 70–76). The consultants only opined on Plaintiff's breast cancer; they did not have evidence of the ongoing arthralgia and frozen shoulder conditions. (*Id.*)

Plaintiff's previous employment was a manager at a nail salon. (R. 26, 41, 43.) This job required her to answer the phone, oversee employees, and stand for 5–6 hours at a time with some bending or crouching. (*Id.*) She stopped working in May 2016, due to the pain in her

2

shoulder, back, and leg. (R. 43.) Plaintiff attempted to work a receptionist job during September 2017, but quit after two days due to her dizziness and leg pain. (R. 23.)

A vocational expert ("VE") opined on whether a hypothetical individual with Plaintiff's limitations could perform her past work as a nail salon manager (DOT 187.167-058) or as a nail technician (DOT 331.674-010.) (R. 49–51.) The VE noted that an individual of Plaintiff's age, education, and work experience who can (1) perform light work; (2) cannot climb ladders, ropes, or scaffolds; (3) can occasionally climb ramps or stairs; (4) can occasionally reach overhead bilaterally; (5) who should avoid all exposure to use of dangerous moving machinery and unprotected heights; (6) who can occasionally balance, stoop, crouch, kneel, and crawl; (7) who cannot reach overhead with her non-dominant arm; and (8) could frequently handle and finger, could perform her past work as a nail salon manager, but not as a nail technician. (*Id.*) The VE noted that if Plaintiff was limited to sitting or standing for twenty-five minutes at a time, it would eliminate the possibility of her performing her past work. (R. 59.) The VE also opined that Plaintiff's other alleged limitations like her napping schedule, regular breaks, and proposed limitation of "occasional" handling and fingering also foreclosed her past work. (R. 60.)

The VE also testified to the possibilities of other jobs Plaintiff could perform in the national economy with the limitations the ALJ proposed. The VE noted transferable skills from the manager position would enable the plaintiff to take a receptionist role. (R. 51.) The VE forecasted that while there are around 610,000 receptionist jobs in the national economy, Plaintiff would only be qualified for 152,500 of them due to her lack of computer skills and limited English-language proficiency. (R. 56.)

On September 26, 2019, the ALJ ruled that Plaintiff was not disabled. (R. 98.) At step one of the five-step analysis, the ALJ determined Plaintiff had not engaged in substantial gainful

activity since the alleged onset date. (R. 92.) At step two, the ALJ found the Plaintiff had severe impairments of breast cancer status-post lumpectomy, radiation and chemotherapy with residual arthralgia/myalgia, degenerative disc disease, osteoarthritis of the right hand, and frozen left shoulder/arthralgia. (R. 92.) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 93.) Before step four, the ALJ determined Plaintiff's Residual Functioning Capacity ("RFC") allowed Plaintiff to perform light work with certain limitations:

> she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps or stairs; she can occasionally balance, stoop, crouch, kneel and crawl; she can occasionally reach overhead bilaterally; she can frequently handle and finger bilaterally; and she should avoid all work place hazards, such as moving machinery and exposure to unprotected heights.

(R. 94.) At step four, the ALJ found Plaintiff capable of performing her past relevant work as a nail salon manager, subject to the RFC's limitations. (R. 97.) Since the ALJ reasoned that Plaintiff could perform her past work, she held that Plaintiff was not disabled under the Social Security Act and denied her benefits thereunder. (R. 98.) The ALJ did not proceed to step five.

On September 30, 2019, the Appeals Council denied review. (R. 1.)

## STANDARD OF REVIEW

### A. Judicial Review

When a social security case is brought for judicial review, courts do not substitute their judgment for that of the ALJ or reweigh evidence to decide whether the individual is disabled. *Gibson v. Massanari*, 18 F. App'x 420, 425 (7th Cir. 2001). Rather, review of the ALJ's decision is limited to determining whether it adequately discusses the issues, and is based upon substantial evidence and the proper legal standard. *See Campbell v. Astrue,* 627 F.3d 299, 306

(7th Cir. 2010); *Villano*, 556 F.3d at 562. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938).) The ALJ must "build a logical bridge" from evidence to conclusion. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002); *Villano,* 556 F.3d at 562. When the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940; *see also Villano*, 556 F.3d at 562.

  **B.**  **Disability Standard**

An individual is "disabled" if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether an individual is disabled, an ALJ engages in a five-step analysis: (1) is the plaintiff presently unemployed; (2) does the plaintiff have a severe impairment; (3) does the plaintiff's impairment meet or equal an impairment specifically listed in the regulations; (4) is the plaintiff unable to perform a former occupation; (5) is the plaintiff unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4); *see also Creasy v. Barnhart,* 30 F. App'x 620, 622–23 (7th Cir. 2002) (citing *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992)). A negative answer at any step, other than step three, leads to a determination that a plaintiff is not disabled, and the ALJ need not proceed any further. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001). An affirmative answer leads to the next step, other than at step three or five, where the ALJ can find the plaintiff is disabled. *Id.*

**ANALYSIS**

Plaintiff raises two issues for our review. First, whether the ALJ sufficiently articulated her reasoning in assessing both Plaintiff's physical and mental RFC. Second, whether the ALJ erroneously relied on the VE's testimony when she used the incorrect DOT classification number in her opinion. (Compl. (Dkt. No. 1.)) [2]

## I. RFC Analysis

Plaintiff first raises the issues of whether the ALJ properly assessed Plaintiff's physical and mental limitations in her RFC analysis and articulated her reasoning. A plaintiff's RFC is the most a plaintiff can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must assess a plaintiff's medically determinable impairments, whether severe or not severe, based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a.) The ALJ must consider all relevant evidence in the record, "even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Id.* (quoting *Villano*, 556 F.3d at 563).

### A. Physical Limitations

Plaintiff argues that the ALJ "offered little to no insight into how she determined that Plaintiff would be capable of walking, standing, and sitting sufficiently to sustain light work," "ignored any impact [Plaintiff's impairments] might have on Plaintiff's functioning at work" and failed to properly explain her reasoning. (Plaintiff's Response Memorandum ("Pl. Mem.") (Dkt. No. 8) at 8–9.)

---

[2] Plaintiff requests in her complaint any statutory attorney fees, costs, and expenses to which she and/or her attorney may be entitled. (Compl. ¶ 22.) However, Plaintiff fails to ask for any fees within her Memorandum in Support of Reversing or Remanding. (Pl. Mem.) Since there is an absence of facts and arguments on the issue of attorney's fees, we decline to rule on an award of attorney's fees at this juncture. We will entertain a motion for attorney's fees and costs if properly raised before the court.

In assessing a plaintiff's RFC, the ALJ should consider the "nature and extent of [Plaintiff's] physical limitations," and limited abilities to perform physical demands or functions that may impact plaintiff's ability to do past work, such as sitting, standing, walking, lifting, reaching, handling, or crouching. 20 C.F.R. § 404.1545. This evidence may arise in a variety of forms, including medical sources, daily activities, efforts to work, and "any other factors showing how [the] impairment(s) affects [plaintiff's] ability to work." 20 C.F.R. § 404.1512(a). An ALJ must articulate her reasons for rejecting a plaintiff's complaints of pain, beyond solely saying there is no medical evidence to support them. *Myles v. Astrue,* 582 F.3d 672, 676–77 (finding the ALJ erred in rejecting plaintiff's claims of fatigue and hand limitations when he stated only that there was no objective medical evidence to support them).

Here, the ALJ stated generally that "the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical and other evidence of record." (R. 94–95.) But the ALJ did not explain this inconsistency. For example, the ALJ acknowledged Plaintiff's complaints of fatigue and inability to walk, sit, or stand for extended periods, but her analysis did not articulate her reasoning for discounting these claims as required by *Myles*. (R. 94–95.) All the ALJ cited was Plaintiff's treating physicians' normal physical examinations; yet, nothing in these examinations suggested Plaintiff's doctors tested her ability to walk, sit, or stand for extended periods of time. (R. 371–2, 394, 412–13, 420, 427.) Nor does the evidence necessarily support the ALJ's finding. For example, Plaintiff's daily activities, that the ALJ acknowledged like taking walks in her backyard, watching T.V., going to the doctors, and going to church, also fail to serve as a proper basis for this conclusion as they do not indicate any prolonged ability to walk, sit, or stand. (R. 95.) Further, the VE testified that if Plaintiff were limited to 25 minutes of sitting or standing at a time or needed to nap three to four times a

7

week, then she would be foreclosed from her past work. (R. 59.) Since there is insufficient explanation of how the ALJ reached her conclusion that Plaintiff can do light work including walking, sitting, or standing for a period sufficient for work in light of the preceding evidence, we conclude the ALJ failed to build the requisite logical bridge from the evidence to her conclusion. *Villano,* 556 F.3d at 562; *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002).

### B. Mental Limitations

Plaintiff claims the ALJ also failed to consider her mental limitations in the RFC analysis. (Pl. Mem. at 10.) Plaintiff argues the ALJ did not consider how her depression, fatigue, or headaches might affect her ability to concentrate and sustain work on a regular and continuing basis. (*Id.* at 11.)

In determining mental abilities, the ALJ assesses the nature and extent of mental limitations and determines whether there is a limited ability to carry out mental activities such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision and work pressures. 20 C.F.R. § 404.1545(c). Mental limitations must be part of the RFC assessment, because "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a plaintiff's] ability to do past work and other work." 20 C.F.R. § 404.1545(c).

At steps two and three of the disability analysis, the ALJ uses "paragraph B" criteria in determining whether a plaintiff has a severe mental impairment. 20 C.F.R. § 404.1520a; *see also Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013). Under paragraph B, the ALJ rates as none, mild, moderate, marked, or extreme a plaintiff's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating,

persisting or maintaining pace; and adapting or managing oneself. *Id.* The ALJ must also incorporate "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(4). The limitations in these functional areas are used to determine the severity of the mental impairment at step-two, but are not an RFC assessment. 20 C.F.R. § 404.1520a(d).

The ALJ found Plaintiff's affective disorder yielded mild limitations in each of the four functional areas. (R. 92.) She classified Plaintiff's depression as non-severe because it caused only a minimal limitation on her ability to perform basic mental work activities. (*Id.*) In doing so, the ALJ wrote that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment" but that her RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (R. 93.) However, the combined impact of Plaintiff's impairments must be "considered throughout the disability determination process." 20 C.F.R. § 404.1523(c); *see also Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013); *Alesia v. Astrue,* 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011). Considering a plaintiff's mental limitations in the RFC analysis, even if non-severe, is necessary to adequately determine whether the plaintiff can carry out the mental activities required in her past work at step four. *Id.* at 934; *see also* 20 C.F.R. § 404.1545(a); *Murphy*, 759 F.3d at 817.

Here, the ALJ's analysis of Plaintiff's mental limitations occurred only in her step-two explanation of the Paragraph B criteria. (R. 92–93.) The ALJ provides no explanation of the combined impact of Plaintiff's depression with her other limitations. (R. 94–97.) In the RFC assessment, the ALJ acknowledged Plaintiff's claim of "sadness," and listed her daily activities like walks in her back yard, going to the doctors, watching T.V., and going to church. (R. 94.) The ALJ recited medical opinions that noted normal mental status examinations. (R. 92–93)

9

(collecting citations to the record.) The ALJ did not, however, either in the Paragraph B analysis or the RFC assessment, discuss Plaintiff's diagnosis of depression from her treating physician. (R. 529.)³ Although the ALJ determined Plaintiff's depression was non-severe, she must still consider it in combination with Plaintiff's other limitations in her RFC assessment. 20 C.F.R. § 404.1545(a).

We conclude there is no "accurate and logical bridge" between the ALJ's recitation of the evidence and the RFC determination that there are no mental limitations. To cure this lapse, the ALJ should consider and explain whether there are mental limitations flowing from Plaintiff's non-severe depression that would affect Plaintiff's ability to do light work, in conjunction with her physical limitations.

## II.     Typological Error in DOT Classification Number

Plaintiff argues the classification of Plaintiff's past work was DOT # 187.167-018, is Business Representative, Labor Union, and that that bears no resemblance to her work as a nail salon manager. (Pl. Mem. at 11.) The commissioner argues that this was simply a harmless typographical error within the ALJ's opinion. (Def. Mem. (Dkt. No. 14) at 10.) We will consider a mistake a typographical error and resolve it in favor of the ALJ if the ALJ explains the correct evidence in the opinion. *See Brown v. Bowen,* 847 F.2d 342, 345 (7th Cir. 1988). We are convinced that this is merely a typographical error. First, this is a one key-stroke difference from

---

³ Plaintiff also argues that the ALJ failed to consider that her fatigue and headaches would affect her ability to concentrate in a work setting. Plaintiff reported headaches through October 2016, but they do not appear on later medical reports. (R. 390–92, 394, 400, 402.) Plaintiff did testify to her inability to walk, sit, or stand for long periods of time due to headache and fatigue. (R. 36–37.) This allegation could show an issue with concentration or distractibility in a work setting. Although discrete, the ALJ should consider this evidence within her RFC assessment in determining if Plaintiff's mental limitations affect her ability to sustain work on a regular and continuous basis.

10

the number entered into the ALJ's opinion.  Second, the ALJ noted she relied on the hearing testimony from the VE that cited the correct number, suggesting that the ALJ intended to consider the correct classification number.  (R. 98.)  Third, the only place where the incorrect classification is listed is in the ALJ's opinion.  (R. 97.)  Fourth, within Step Four of the ALJ's opinion, she considers how the evidence relates to the position of nail salon manager, the proper classification.  (*Id.*)  For these reasons, we resolve the typographical error in favor of the ALJ because this is a harmless typographical error.  Since we remand the case on other grounds, the ALJ should ensure the proper classification is used in future opinions to avoid inconsistency.

## CONCLUSION

We deny Defendant's motion for summary judgment and remand to the Social Security Administration for further proceedings consistent with this opinion.

_____
Marvin E. Aspen
United States District Judge

Dated:  November 18, 2020
         Chicago, Illinois